THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | 3:24-CR-268 |
| v. | : | (JUDGE MARIANI) |
| | : | |
| ARMAND KIERRAN HOBSON, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court is Defendant Armand Hobson's "Motion to Suppress Evidence." (Doc. 46). The Indictment, (Doc. 1), charges Defendant with one count of Conspiracy to Distribute a Controlled Substance, in violation of 21 U.S.C. § 846, one count of aiding and abetting the Distribution of a Controlled Substance, in violation 21 U.S.C. § 841(a)(1), 18 U.S.C. § 2, and one count of Possession with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 841(b)(1)(D). The present Motion seeks to suppress all evidence seized during the execution of the search warrant for a residence located at 303 Gardner Street, Plymouth, Pennsylvania. (Doc. 47 at 1). For the reasons set forth below, the Court will deny Defendant's Motion.[1]

---

[1] Defendant did not request an evidentiary hearing and, upon review of Defendant's motion and brief in support, the Court concludes that Defendant fails to present a colorable constitutional claim and further finds there are no material facts in dispute. Accordingly, the Court did not hold an evidentiary hearing. *See United States v. Hines*, 628 F.3d 101, 105 (3d Cir. 2010) ("A motion to suppress requires an evidentiary hearing only if the motion is sufficiently specific, non-conjectural, and detailed to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome of the motion to suppress.").

## II. FACTUAL BACKGROUND

Because the Court's Opinion is based on the Affidavit of Probable Cause submitted

in support of the search warrant for 303 Gardner Street, Plymouth, Pennsylvania, (Doc. 47-

1 at 6-24), the unredacted facts contained therein are included here in full:

> Your first affiant is Detective Robert Miller of the Kingston Police Department. Detective Miller has been employed as a police officer since 2005 and has been a full-time police officer with the Kingston Police Department since 2012. Detective Miller was promoted to the rank of Detective in the Kingston Police Department in January of 2020 and is currently assigned to the Special Investigations Division which is in charge of investigating narcotics, prostitution and gang related crimes. Detective Miller is a graduate of the Lackawanna College Act 120 Police Academy. Detective Miller has participated in training provided by the DEA, the PA State Police, Northeast Counterdrug Training Center, along with numerous other state, local and federal agencies and also possess a Type 'A' Electronic Surveillance Certificate. Detective Miller has participated in the investigation of various types of criminal activity, including but not limited to violations of the Controlled Substance, Drug, Device and Cosmetic Act. Detective Miller received a Unit Citation Awards in both 2018 and 2022 from the Pennsylvania Narcotics Officers Association. Detective Miller has participated in hundreds of drug investigations as either the chief investigator or as an assistant to other investigators. Detective Miller has also been an active member of the Luzerne County Drug Task Force since 2006.
>
> Your second affiant, Agent John J. Bairea III, has been a Narcotics Agent II with the Pennsylvania Office of Attorney General, Bureau of Narcotics Investigation and Drug Control since December of 2018 and assigned to the Region VIII, Wilkes-Barre Office. Your affiant is also assigned to the Special Operations Group (SOG). Additionally, your affiant is assigned to Homeland Security Investigations as a task force officer, responsible for conducting and assisting different types of federal investigations. Your affiant also served as the Bradford County Drug Task Force Coordination for approximately one year.
>
> Prior to being employed by the Office of Attorney General, your affiant was employed as a police officer with the Philadelphia Police Department, Philadelphia, PA, assigned to the 14th police district for three years, the Blakely Police Department, Carbondale City Police Department, Jenkins Township

Police Department, Avoca Police Department, and Pittston Township Police Department for approximately four years. Your affiant completed the required ACT 120 training during which time your affiant was trained in drug identification as well as other controlled substance related curriculum.

While employed with the Philadelphia Police Department, Blakely Police Department, Carbondale City Police Department, Jenkins Township Police Department, Avoca Police Department, and Pittston Township Police Department, your affiant conducted hundreds of investigations, many of which were drug related. Your affiant was also member of the Lackawanna County Drug Task Force while employed with the Blakely Police Department.

Your affiant is an 'investigative or law enforcement officer' within the meaning of section 5702 of the Pennsylvania Wiretapping and Electronic Surveillance Control Act and in such capacity has successfully completed the Pennsylvania State Police 'A' Certification course required to monitor and use electronic surveillance equipment. Your affiant's certification number is 'A-6275.' This certification allows your affiant to monitor and participate in court-authorized electronic interceptions of oral, wire, and electronic communications. Your affiant has conducted consensual interceptions involving drug activity, resulting in the arrests of numerous individuals involved in drug trafficking. Your affiant has served as an affiant in three court authorized non-consensual wiretap investigations which resulted in the arrest of individuals engaged in drug trafficking and the seizure of controlled substances.

Your affiant has completed numerous courses specifically regarding controlled substances, the manufacturing of controlled substances, as well as the trafficking of controlled substances. Your affiant's continuing education includes certifications from the Luzerne County District Attorney's Office, Lackawanna County District Attorney's Office, Philadelphia Police Academy, Delaware Valley Intelligence Center, Pennsylvania Narcotic Officers' Association, Pennsylvania State Police, Pennsylvania Office of the Attorney General Criminal Investigations Academy, Northeast Counter Drug Training Center, and Municipal Police Officers' Education and Training Commission.

As a result of the foregoing training and experience, your affiant has special expertise in the area of illegal drug trafficking and the cryptic terms and coded language used by those who traffic, distribute and possess illegal drugs.

In August of 2024, Detective Miller interviewed a reliable confidential informant in reference to drug trafficking in Luzerne County. This CI has proven to be historically reliable and the CI's actions/information has led to numerous arrests of individuals for drug trafficking offenses. This CI stated that a male known to the CI as 'Tone' is involved in trafficking crack cocaine and heroin/fentanyl in the Kingston/Edwardsville area. 'Tone' is described as a light skinned black male in his 20's, approximately 270 pounds, with numerous tattoos. The CI stated that 'Tone' utilizes the cell phone number 570-791-5477 to conduct drug transactions. 'Tone' also mentioned previously being arrested by federal law enforcement.

Using the phone number provided, Detective Miller conducted a phone number search utilizing open-source applications and learned that it was associated with 'Akilees Hobson.' Detective Miller is familiar with Akilees Hobson from previous investigations and knows that Hobson was arrested by federal law enforcement on firearm and drug charges. Hobson also fits the description provided by the CI.

The CI was shown an unlabeled picture of Akilees Hobson and confirmed that this is the person known to the CI as 'Tone.'

A criminal history for Akilees Hobson shows convictions for robbery (juvenile), resisting arrest and PWID, along with the Federal arrest for drugs and a firearm. Additionally, he is showing to be currently on Federal Supervised Release.

A Pennsylvania's Driver's License for Akilees Hobson shows the address of 303 Gardner St in Plymouth.

In August of 2024, officers of the Kingston Police Department and assisting agencies working as the Luzerne County Drug Task Force met with a confidential information in order to make a purchase of crack cocaine from Akilees Hobson AKA Tone. The CI communicated with Hobson at 570-791-5477 and arranged to purchase a known quantity of crack cocaine in exchange for a specific amount of US currency. The CI was told to meet Hobson at a known location within the boundaries of Luzerne County.

The CI was searched and no contraband was located. The CI was given pre-recorded US currency and a recording device and was followed to the meeting location by Miller while assisting officers conducted surveillance in the area.

A short time later, surveillance officers observed Hobson driving a black Ford sedan, Pennsylvania registration LZX6576, which arrived at the meeting location. Hobson then met with the CI and conducted an exchange. The two then parted ways.

The CI then met with Miller and turned over a quantity of crack cocaine. The CI was again searched and no contraband was located.

Hobson left the meeting area in the black Ford sedan and was followed directly to 191 Jackson St in Edwardsville. Hobson exited the vehicle and entered the residence through the front door.

The crack cocaine was field tested and showed a positive result. It was then packaged as evidence and sent to the PSP Crime Lab for testing.

A query on PennDot records showed that the black Ford sedan is registered to Lukas Fuqua of 11 Skidmore St in Plains. The VIN of the vehicle listed on the registration is 1FADP3F2XDL279328.

Detective Miller reviewed the surveillance photographs and videos for this purchase and confirmed the male to be Akilees Hobson.

Again in August of 2024, officers of the Kingston Police Department and assisting agencies working as the Luzerne County Drug Task Force met with a confidential informant in order to make a purchase of crack cocaine from Akilees Hobson AKA Tone. The CI communicated with Hobson at 570-791-5477 and arranged to purchase a known quantity of crack cocaine in exchange for a specific amount of US currency. The CI was told to meet Hobson at a known location within the boundaries of Luzerne County.

The CI was searched and no contraband was located. The CI was given pre-recorded US currency and a recording device and was followed to the meeting location by Miller while assisting officers conducted surveillance.

Surveillance was established at 191 Jackson St in Edwardsville. A short time after the CI's phone call, surveillance observed Hobson exit 191 Jackson St and enter the black Ford sedan, Pennsylvania registration LZX6576. This vehicle was followed directly to the CI's location.

Once Hobson arrived at the meeting location, the CI met with Hobson and conducted an exchange. The two then parted ways a short time later.

The CI then met with Miller and turned over a quantity of crack cocaine. The CI was again searched and no contraband was located.

Hobson was followed by surveillance as he drove directly back to 191 Jackson St in Edwardsville.

The crack cocaine was field tested and showed a positive result. It was then packaged as evidence and sent to the PSP Crime Lab for testing.

Later in August, officers of the Kingston Police Department and assisting agencies working as the Luzerne County Drug Task Force met with a confidential informant in order to make a purchase of crack cocaine from Akilees Hobson AKA Tone. The CI communicated with Hobson at 570-791-5477 and arranged to purchase a known quantity of crack cocaine in exchange for a specific amount of US currency. The CI was told to meet Hobson at a known location within the boundaries of Luzerne County.

The CI was searched and no contraband was located. The CI was given pre-recorded US currency and a recording device and was followed to the meeting location by Miller while assisting officers conducted surveillance.

Surveillance was established at 191 Jackson St in Edwardsville. A short time after the CI's phone call, surveillance observed Hobson exit 191 Jackson St and enter the black Ford sedan, Pennsylvania registration LZX6376. This vehicle was followed directly to the CI's location.

Once Hobson arrived at the meeting location, the CI met with Hobson and conducted an exchange. The two then parted ways a short time later.

The CI then met with Miller and turned over a quantity of crack cocaine and fentanyl. The CI was again searched and no contraband was located. The CI relayed that Hobson gave the CI the fentanyl 'to test'.

Hobson was followed by surveillance as he drove directly back to 191 Jackson St in Edwardsville.

The crack cocaine and fentanyl were field tested and showed a positive result. It was then packaged as evidence and sent to the PSP Crime Lab for testing.

In September of 2024, officers of the Kingston Police Department and assisting agencies working as the Luzerne County Drug Task Force met with a confidential informant in order to make a purchase of fentanyl from Akilees Hobson AKA Tone. The CI communicated with Hobson at 570-791-5477 and arranged to purchase a known quantity of fentanyl in exchange for a specific amount of US currency. The CI was told to meet Hobson at a known location within the boundaries of Luzerne County.

The CI was searched and no contraband was located. The CI was given pre-recorded US currency and a recording device and was followed to the meeting location by Miller while assisting officers conducted surveillance.

A short time later, Hobson arrived driving a black Ford sedan bearing Pennsylvania registration LZX6576. The CI met with Hobson and the two conducted an exchange. They then parted ways.

The CI then met with Miller and turned over a quantity of fentanyl. The CI was again searched and no contraband was located.

The fentanyl was field tested and showed a positive result. It was then packaged as evidence and will be sent to the PSP Crime Lab for testing.

On September 4, 2024, officers of the Kingston Police Department and assisting agencies working as the Luzerne County Drug Task Force met with a confidential informant in order to make a controlled purchase of crack cocaine from Akilees Hobson AKA Tone. The CI communicated with Hobson at 570-791-5477 and arranged to purchase a known quantity of crack cocaine in exchange for a specific amount of US currency. The CI was told to meet Hobson at a known location within the boundaries of Luzerne County.

The CI was searched and no contraband was located. The CI was given pre-recorded US currency and a recording device and was followed to the meeting location by Miller while assisting officers conducted surveillance.

A short time later, Hobson arrived at the meeting location operating a black Ford sedan bearing Pennsylvania registration LZX6576. The CI and Hobson conducted an exchange and parted ways.

The CI then met with Miller and turned over a quantity of crack cocaine. The CI was again searched and no contraband was located.

The crack cocaine was field tested and showed a positive result. It was then packaged as evidence and will be sent to the PSP Crime Lab for testing.

On September 6, 2024, President Judge Vough signed an order authorizing the installation and monitoring of a tracking device for the black Ford Focus sedan, Pennsylvania registration LZX6576, operated by Akilees Hobson AKA Tone.

Later in September, officers of the Kingston Police Department and assisting agencies working as the Luzerne County Drug Task Force met with a confidential informant in order to make a purchase of fentanyl from Akilees Hobson AKA Tone. The CI communicated with Hobson at 570-791-5477 and arranged to purchase a known quantity of fentanyl in exchange for a specific amount of US currency. The CI was instructed to meet Hobson at a known location within the boundaries of Luzerne County.

The CI was searched and no contraband was located. The CI was given pre-recorded US currency and a recording device and was followed to the meeting location by Miller while assisting officers conducted surveillance.

A short time later, surveillance observed Hobson arrive at the meeting location driving a black Ford Focus, Pennsylvania registration LZX6576. The CI then met with Hobson and conducted an exchange. They then parted ways.

The CI then met with Miller and turned over a quantity of fentanyl. The CI was searched and no contraband was located.

The fentanyl was fielded tested and showed a positive result. It was then packaged as evidence and will be sent to the PSP Crime Lab for testing.

Officers of the Kingston Police Department and assisting agencies, working as the Luzerne County Drug Task Force, conducted several days of physical surveillance on Hobson. It was found that Hobson, in the Ford Focus, frequently travels to 303 Gardner St in Plymouth and parks in the rear of the residence.

Detective Miller determined that Armand Hobson, brother of Akilees Hobson, has a PA Identification Card which lists 303 Gardner Street in Plymouth as his address.

The mobile tracker was installed on the Ford Focus sedan, Pennsylvania registration LZX6576, on September 10, 2024.

The mobile tracking data was reviewed over the next several days and it was found that the vehicle frequently travels to the area of the rear of 303 Gardner St in Plymouth.  Many of these stops are only for very short periods of time.

During the week which began on September 9, 2024, officers of the Kingston Police Department and assisting agencies working as the Luzerne County Drug Task Force met with a confidential informant in order to make a purchase of fentanyl from Akilees Hobson AKA Tone.  The CI communicated with Hobson at 570-791-5477 and arranged to purchase a known quantity of fentanyl in exchange for a specific amount of US currency.  The CI was instructed to meet Hobson at known location within the boundaries of Luzerne County.

The CI was searched and no contraband was located.  The CI was given pre-recorded US currency and a recording device and was followed to the meeting location by Miller while assisting officers conducted surveillance.

A short time later, Detective Palka observed Akilees Hobson exit the front door of 191 Jackson St in Edwardsville and enter the black Ford Focus.  The vehicle was then followed directly to the meeting location, where Hobson met with the CI.  The two conducted an exchange and parted ways a short time later.

The CI met with Miller and turned over a quantity of fentanyl.  The CI was again searched and no contraband was located.

The fentanyl was field tested and showed a positive result.   It was then packaged as evidence and will be sent to the PSP Crime Lab for testing.

Later that same week, officers of the Kingston Police Department and assisting agencies working as the Luzerne County Drug Task Force met with a confidential informant in order to make a purchase of fentanyl from Akilees Hobson AKA Tone.  The CI communicated with Hobson at 570-791-5477 in an attempt to arrange the purchase, but was told by Hobson that he was out of the area.  Hobson then told the CI to meet his brother in Plymouth.

The CI advised Miller that the CI had met with Akilees Hobson's brother on a previous occasion when Akilees was not in the area. On that occasion, the CI stated that the brother arrived driving a silver Jeep Grand Cherokee and sold the CI a controlled substance. The CI knew the brother by the alias of 'Tez'.

A series of phone calls then occurred between the CI and Akilees Hobson where Hobson instructed the CI to meet with the brother in Plymouth. It was arranged, through Akilees Hobson, that the CI would make a purchase of a known quantity of fentanyl in exchange for a specific amount of US currency, and that the deal would actually be conducted by the brother.

Surveillance was established in the area of 303 Gardner Street in Plymouth. Once at that location, Detective Palka observed a male, fitting the physical description/appearance or Armand Hobson, in the area of the rear of 303 Gardner St in Plymouth.

The CI was searched and no contraband was located. The CI was given pre-recorded US currency and a recording device and was followed to the meeting location by Miller while assisting officers conducted surveillance.

When the CI arrived at the meeting location, surveillance observed the same male fitting the physical description/appearance of Armand Hobson emerge from the area of the rear of 303 Gardner St. This male walked directly to the CI's location.

The CI then met with the male known to the CI as 'Tez' and conducted an exchange. The two then parted ways a short time later.

The CI then met with Miller and turned over a quantity of fentanyl. The CI was again searched and no contraband was found.

Surveillance was able to view 'Tez' walk directly back to the same area in the rear of 303 Gardner St in Plymouth.

The fentanyl was field tested and showed a positive result. It was then packaged as evidence and will be sent to the PSP Crime Lab for testing.

Your affiants are familiar with Armand Hobson from previous police incidents. In 2017, Armand Hobson was listed as a suspect in an incident in Wilkes Barre

where a shot was fired from a handgun inside a residence. In 2019, Armand Hobson was found to be in possession of a stolen firearm when confronted by an Edwardsville PD officer. In 2022, Armand Hobson was the driver of a vehicle involved in a shooting in Wilkes Barre.

A criminal history for Armand Hobson shows convictions for drug delivery and possessing a stolen firearm.

Detective Miller then reviewed the tracker data and found that the black Ford sedan had traveled on several occasions to the area of 516 Roosevelt St in Edwardsville, the Hilltop Apartments. The apartment complex is known to your affiants as a high crime area where drug trafficking and firearm violence occurs.

Detective Miller reviewed video from the times the tracker has shown the vehicle in that area and learned the following:

On September 10, 2024, at approximately 10:55PM, the black Ford pulls in and two males get out. The passenger appears to be Akilees Hobson. The two males go to the trunk of the vehicle and back seat and get items. They then appear to be carrying a backpack or duffel bag along with a large box. They appear to enter 516 Roosevelt Apartment 4.

At 11:23PM, a white male parks a vehicle, PA reg KJB7930, in the lot and appears to enter Apartment 4. The male exits 6 minutes later and leaves the complex.

Also, at approximately 11:23 PM, the male that was driving the black Ford exits apartment 4 and gets something from the Ford before going back into Apartment 4.

At 11:30PM, the male suspected to be Akilees Hobson exits apartment 4 and goes to the Ford. The vehicle leaves for a brief time but is then seen backing up near the dumpster. The second male that was in the Ford exits apartment 4 and speaks with the driver, then the Ford leaves.

At 12:45AM on September 11, 2024, the black Ford returns and parks near the dumpster in the 516 lot. The second male that was in the vehicle exits apartment 4 and places something in the trunk of the Ford. He then enters the passenger seat of the vehicle and they leave the complex.

On the evening of September 11, 2024 at 11:40PM, the black Ford pulls in the parking lot of 516 Roosevelt St. The driver exits and appears to be Akilees Hobson. He enters apartment 4.

There is a silver Jeep Grand Cherokee, PA reg MKJ7839, already in the same parking lot. This Jeep arrived at 11:07PM. A male consistent with the description and physical appearance of Armand Hobson enters apartment 4. The Jeep is registered to Brittany Rattigan of 303 Gardner St in Plymouth. From Facebook posts, it appears that Rattigan is the significant other of Armand Hobson.

At approximately 1:00AM on September 12, 2024, the males believed to be Akilees and Armand Hobson exit apartment 4. The male suspected to be Akilees Hobson goes to the trunk of the Ford and appears to place something inside. The male suspected to be Akilees goes to the Ford and the male suspected to be Armand goes to the Jeep. The Ford leaves, but returns several seconds later and pulls behind the Jeep. The male suspected to be Akilees Hobson then goes to the trunk of the Jeep and is seen manipulating items inside. He then gets back in the Ford and both vehicles leave the area.

Detective Miller spoke with CI#1 after seeing the male suspected to be Akilees Hobson placing items in the trunk of the black Ford sedan. Detective Miller asked the CI if the CI ever saw or knew of anything in the trunk of that vehicle. CI#1 then told Detective Miller that CI#1 knew Hobson to store his supply of controlled substances inside a small black shoulder bag inside the trunk of the black Ford sedan. CI#1 personally observed this on several occasions.

Detective Miller was able to locate the resident of 516 Roosevelt St Apartment 4, who was identified as Latoya Seidou. Detective Miller found a Facebook profile for Seidou, 'Latoya Somean Seidou', and it shows a picture with a male known to Detective Miller to be Wendell Freeman, alias of 'Billz'. Freeman is known to be a long-time drug supplier in the area of the Hilltop Apartments. Detective Miller obtained this knowledge from previous interviews with drug users/dealers throughout the past several years.

Detective Miller interviewed a previously reliable CI(CI2) in early 2024 who mentioned that 'Billz' was the main supplier of controlled substances in the Edwardsville area. CI2 stated that CI2 purchases controlled substances, mainly cocaine, from 'Billz' in Hilltop Apartments. CI2 knows that 'Billz' resides in one of the apartments on the 'top left'. CI2 stated that 'Billz' carries a firearm

on him and is involved in [a] criminal street gang from New York. CI2 was shown a picture of Wendell Freeman and confirmed this was the male known to CI2 as 'Billz'.

The area of 516 Roosevelt St, Apartment 4 is consistent with CI2 stating that Freeman lives in an apartment on the 'top left' of Hilltop Apartments.

A criminal history for Wendell Freeman shows multiple convictions for PWID.

A PA Driver's License for Freeman shows the address of 17 E Chestnut St Apt 2 in Wilkes Barre. A review of the tracker showed that the black Ford sedan has traveled to that area in Wilkes Barre on numerous occasions.

During the week beginning on September 16, 2024, officers of the Kingston Police Department and assisting agencies working as the Luzerne County Drug Task Force met with a confidential informant in order to make a purchase of fentanyl from Akilees Hobson AKA Tone. The CI communicated with Hobson at 570-791-5477 and arranged to purchase a known quantity of fentanyl for a specific amount of US currency. Hobson advised the CI that 'he needed to go pick it up in Plymouth' and that he would then meet the CI at a known location within the boundaries of Luzerne County.

At this time, the black Ford sedan PA reg LZX6576, was parked at 191 Jackson St in Edwardsville. Weiss was conducting surveillance in that area and observed Hobson exit the residence and enter the vehicle.

A short time later, Hobson drove the vehicle to the laundromat on Main St in Edwardsville where he parked for a short time, before driving directly to 303 Gardner St in Plymouth and parking at the rear of that residence. Surveillance observed the vehicle travel to the rear of 303 Gardner St in Plymouth, but were unable to see what occurred once the vehicle parked there due to the area being difficult to surveil.

Approximately 30 minutes later, the vehicle travelled from the rear of 303 Gardner St towards the Edwardsville area. Surveillance officers followed the vehicle.

The CI was searched and no contraband was located. The CI was given pre-recorded US currency and recording device and was followed to the meeting area by Miller who was also assisted by surveillance officers.

The black Ford Sedan was then followed directly to the meeting location where Hobson met the CI and conducted an exchange. The two then parted ways.

The CI then met with Miller and turned over a quantity of fentanyl. The CI was again searched and no contraband was located.

The fentanyl was field tested and showed a positive result. It was then packaged as evidence and will be sent to the PSP Crime Lab for testing.

Later in that same week, officers at the Kingston Police Department and assisting agencies working as the Luzerne County Drug Task Force met with CI2 in order to make a purchase of cocaine from Wendell Freeman AKA Billz. The CI communicated with Billz utilizing a cellular telephone and arranged to purchase a known quantity of cocaine in exchange for a specific amount of US currency. The CI agreed to meet Freeman at a known location within the boundaries of Luzerne County.

The CI was searched and no contraband was located. The CI was given pre-recorded US currency and a recording device and was followed to the meeting location by Miller while assisting officers conducted surveillance in the area.

A short time after the CI arrived at the meeting location, surveillance officers observed Freeman exit 516 Roosevelt St Apartment 4 in the Hilltop Apartments. Freeman entered a blue Nissan sedan, Pennsylvania registration MMV7157, and was followed directly to the CI's location.

Once Freeman arrived at the CI's location, the two conducted an exchange and parted ways a short time later.

The CI then left the area and met with Miller. The CI turned over a quantity of cocaine. The CI was again searched and no contraband was located.

The cocaine was field tested and showed a positive result. It was then packaged as evidence and will be sent to the PSP Crime Lab for testing.

The registration of the Nissan sedan was queried and found to be registered to Wendell Freeman.

On September 16, 2024, tracker data showed that the black Ford sedan was in the area of 516 Roosevelt St. Detective Miller reviewed surveillance footage from the Hilltop Apartments and observed the vehicle pull in and park. A male that appeared to be Akilees Hobson exited the Ford and entered 516 Roosevelt St. Apartment 4 and left the area in the black Ford sedan.

On September 18, 2024, Detective Miller reviewed the mobile tracking data and saw that the black Ford sedan travelled to the area of 516 Roosevelt St in Edwardsville. Detective Miller then reviewed the surveillance cameras from the apartment complex and observed the black Ford park in the lot. A male appearing to be Akilees Hobson exits the driver seat of the vehicle carrying a black shoulder style bag. The male then approaches and enters apartment 4. Approximately 5 minutes later, the same male carrying the same shoulder bag exits apartment 4 and returns to the vehicle. The male places the shoulder bag in the trunk and leaves the lot in the vehicle.

Surveillance was reviewed further and shows a male matching the description and appearance of Wendell Freeman emerge from the same apartment.

Later in the week beginning on September 16, 2024, officers of the Kingston Police Department and assisting agencies working as the Luzerne County Drug Task Force met with a confidential informant in order to make a purchase of fentanyl from Akilees Hobson AKA Tone. The CI communicated with Hobson at 570-791-5477 and arranged to purchase a known quantity of fentanyl in exchange for a specific amount of US currency. The transaction was set to occur at a known location within the boundaries of Luzerne County.

The CI was searched and no contraband was located. The CI was given pre-recorded US currency and a recording device and was followed to the meeting location by Miller while assisting officers conducted surveillance in the area.

A short time later, the CI met with Hobson at the meeting location. The two conducted an exchange and parted ways a short time later.

The CI then met with Miller and turned over a quantity of fentanyl. The CI was again searched and no contraband was located.

The fentanyl was field tested and showed a positive result. It was then packaged as evidence and will be sent to the PSP Crime Lab for testing.

At the time of this controlled purchase, an officer conducting surveillance on the residence of Armand Hobson AKA Tez, 303 Gardner St in Plymouth, reported seeing a male exit the rear door and take out garbage. This male was also with a small child. After taking out the garbage, the male went back into the rear door of 303 Gardner St with the child. Detective Miller reviewed the surveillance pictures and confirmed this male was Armand Hobson.

Again, in the week that began on September 16, 2024, officers of the Kingston Police Department and assisting agencies working as the Luzerne County Drug Task Force met with a confidential informant in order to make a purchase of fentanyl from Akilees Hobson AKA Tone. The CI communicated with Hobson at 570-791-5477 and arranged to purchase a known quantity of fentanyl in exchange for a specific amount of US currency. The transaction was set to occur at a known location within the boundaries of Luzerne County.

The CI was searched and no contraband was located. The CI was given pre-recorded US currency and a recording device and was followed to the meeting location by Miller while assisting officers conducted surveillance.

A short time later, Hobson arrived at the meeting location operating the black Ford Focus sedan, PA reg LZX6576. The CI met with Hobson and conducted an exchange. The two then parted ways.

The CI then met with Miller and turned over a quantity of fentanyl. The CI was again searched and no contraband was located.

The fentanyl was field tested and showed a positive result. It was then packaged as evidence and will be sent to the PSP Crime Lab for testing.

On September 20, 2024, officers of the Luzerne County Drug Task Force were conducting surveillance on 303 Gardner St in Plymouth. A while female fitting the physical description and appearance of Brittany Rattigan exited the rear door of this residence and entered the silver Jeep Grand Cherokee, Pennsylvania registration MKJ7839. The vehicle then left the area.

A short time later, the Jeep Grand Cherokee returned to the rear of 303 Gardner St in Plymouth. The same female exited this vehicle and went back into the rear door of 303 Gardner St.

16

This Jeep Grand Cherokee is the same vehicle that was observed on surveillance video in the vicinity of 516 Roosevelt St in Edwardsville in the early morning hours of September 12, 2024.

Also on September 20, 2024, Detective Miller observed that the mobile tracking device showed the black Ford sedan to be in the area of 516 Roosevelt St. Detective Miller reviewed surveillance from the apartment complex and observed the silver Jeep Grand Cherokee, driven by a male consistent with the physical description and appearance of Armand Hobson parked in the lot and the male entered 516 Roosevelt St Apartment 4.  A short time later, the black Ford sedan arrived being driven by a male consistent with the physical description and appearance of Akilees Hobson.  This vehicle parked and the male also entered 516 Roosevelt St apartment 4.  The two vehicles remained in the area for some time before the two men exited apartment 4 and left the area.

On September 21, 2024, the black Ford sedan was located in the area of 516 Roosevelt St on two occasions.  During the first, the vehicle parks and male consistent with the physical description and appearance of Akilees Hobson enters apartment 4 and exits a short time later.

During the second time, the vehicle arrives and interacts with a male that exited apartment 4 for a brief time, before the male returns to apartment 4 and the vehicle leaves.

In the early morning hours of September 22, 2024, the black Ford sedan parked in the lot of 516 Roosevelt St and a male exited the vehicle and entered 516 Roosevelt Apartment 4.  Approximately 2 hours later, a male consistent with the physical description and appearance of Akilees Hobson exits Apartment 4 carrying a black shoulder style bag.  This male enters the black Ford sedan and leaves the area.

Within 48 hours of this search warrant application, officers of the Kingston Police Department and assisting agencies working as the Luzerne County Drug Task Force met with a confidential informant in order to make a purchase of crack cocaine from Akilees Hobson AKA Tone.  The CI communicated with Hobson at 570-791-5477 and arranged to purchase a known quantity of crack cocaine in exchange for a specific amount of US currency.  The CI was instructed to meet Hobson at a known location within the boundaries of Luzerne County.

The CI was searched and no contraband was located. The CI was given pre-recorded US currency and a recording device and was followed to the meeting location by Miller while assisting officers conducted surveillance in the area.

A short time later, surveillance posted at 191 Jackson St in Edwardsville observed Akilees Hobson exit the residence and enter the black Ford sedan bearing PA registration LZX6576. The vehicle then left the residence.

The vehicle was followed by surveillance and drove directly to the meeting location. Once at the meeting location, Hobson met with the CI and conducted an exchange. The two then parted ways.

The CI then met with Miller and turned over a quantity of crack cocaine. The CI was again searched and no contraband was located.

The crack cocaine was field tested and showed a positive result. It was then packaged as evidence and will be sent to the PSP Crime Lab for testing.

Again, within 48 hours of this search warrant application, officers of the Kingston Police Department and assisting agencies working as the Luzerne County Drug Task Force met with CI2 in order to make a purchase of cocaine from Wendell Freeman AKA Billz. The CI communicated with Freeman utilizing a cellular telephone and arranged to purchase a known quantity of cocaine in exchange for a specific amount of US currency. The transaction was set to occur at a known location within the boundaries of Luzerne County.

The CI was searched and no contraband was located. The CI was given a pre-recorded US currency and was followed to the meeting location by Miller while assisting officers conducted surveillance in the location.

A short time later, a blue Nissan sedan bearing Pennsylvania registration MMV7157 arrived at the meeting location being operated by Wendell Freeman.

The CI then met with Freeman and the two conducted an exchange. They parted ways a short time later.

Freeman, driving the blue Nissan, then left the area and was followed directly back to the parking lot of 516 Roosevelt St in Edwardsville. At that location,

Freeman parked the vehicle and walked directly into the door of 516 Roosevelt St, Apartment 4.

The CI then met with Miller and turned over a plastic bag containing cocaine. The CI was again searched and no contraband was located.

The cocaine was field tested and showed a positive result. It was then packaged as evidence and will be sent to the PSP Crime Lab for testing.

A final review of the mobile tracking device history showed that the black Ford sedan, Pennsylvania registration LZX6576, traveled multiple times each day to 303 Gardner St in Plymouth. Also, the black Ford sedan is generally parked in the area of 191 Jackson St in Edwardsville during the nighttime hours.

Since the first controlled purchase of cocaine from Wendell Freeman occurred, the blue Nissan sedan, Pennsylvania registration MMV7157, has been seen daily parked in the area of 516 Roosevelt St, Apartment 4, in Edwardsville in the morning hours. Each day, a male consistent with the description and appearance of Wendell Freeman has been seen in or around the vehicle.

Based on the provided information, your affiants are requesting the issuance of a search for the premises and/or vehicles listed on page 1 of this document.

(Doc. 47-1 at 7-23).

Investigators obtained a search warrant for 303 Gardner Street from Luzerne

County Court of Common Pleas Judge Michael T. Vough and law enforcement

officers executed the search warrant on or about September 25, 2024.

### III. ANALYSIS

Defendant argues that the search of 303 Gardner Street was unlawful as there was

insufficient probable cause establishing a connection between the alleged drug activity, the

Defendant, and the residence. (Doc. 47 a 2-3). Specifically, Defendant claims that the

Affidavit of Probable Cause for the search warrant lacked probable cause and failed to

establish a sufficient nexus between Defendant's alleged drug activity and the 303 Gardner

Street residence and, therefore, evidence obtained during the execution of the warrant

should be suppressed.  Defendant further asserts that the search warrant was overbroad,

and that probable cause was lacking because the controlled purchase at 303 Gardner

Street happened 12 days prior to the warrant application and therefore the information

contained in the affidavit was stale.  (*Id.* at 7-10).

> The Fourth Amendment guarantees:
>
> The right of the people to be secure in their persons, houses, papers, and
> effects against unreasonable searches and seizures, shall not be violated, and
> no Warrants shall issue, but upon probable cause, supported by Oath or
> affirmation, and particularly describing the place to be searched, and the
> persons or things to be seized.

U.S. Const. amend. IV.  "To find probable cause to search, there needs to be a 'fair

probability that contraband or evidence of a crime will be found in a particular place.'"

*United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002) (quoting *Illinois v. Gates*, 462 U.S.

213, 238 (1983)).  Probable cause is a "fluid concept" that is fact-specific and "not readily, or

even usefully, reduced to a neat set of legal rules."  *United States v. Jones*, 994 F.2d 1051,

1056 (3d Cir. 1993) (quoting *Gates*, 462 U.S. at 232).

Where, as here, a court is presented with a challenge to an issuing judge's

determination of probable cause in the issuance of a warrant, it must limit its review to an

inquiry of whether "the magistrate had a substantial basis for concluding that probable

cause existed."  *Id.* at 1055; *see Gates*, 462 U.S. at 236 ("A magistrate's determination of

probable cause should be paid great deference by reviewing courts." (citations omitted)).

The court must read the affidavit of probable cause submitted in support of the search

warrant in its entirety and "in a commonsense and nontechnical manner." *United States v.*

*Whitner*, 219 F.3d 289, 296 (3d Cir. 2000) (citing *United States v. Conley*, 4 F.3d 1200,

1206 (3d Cir 1993)).  "In making this determination, the Court confines itself 'to the facts that

were before the magistrate judge, i.e., the affidavit, and [does] not consider information from

other portions of the record.'"  *Id.* (quoting *Jones*, 994 F.2d at 1055).

Here, to uphold Luzerne County Court of Common Pleas Judge Michael T. Vough's

determination of probable cause, the Court must determine whether he had a substantial

basis to conclude that drug-related evidence, including but not limited to drugs, drug

proceeds, and drug paraphernalia, would be found at the 303 Gardner Street residence.  The

Court finds that in issuing the search warrant for 303 Gardner Street, Luzerne County Court

of Common Pleas Judge Michael T. Vough had a sufficient basis to conclude probable cause

so existed.

As previously noted, to find probable cause to search, there must be "a fair

probability that contraband or evidence of a crime will be found in a particular place."

*Burton*, 288 F.3d at 103.  This analysis focuses on the nexus between the illegal activity and

the place to be searched.  *Id.*  "If there is probable cause to believe that someone

committed a crime, then the likelihood that that person's residence contains evidence of the

crime increases."  *Jones*, 994 F.2d at 1055-56.  More specifically, it is reasonable for an

issuing judge to infer that drug-related evidence would be found at the residence of an individual involved in drug dealing. *United States v. Hodge*, 246 F.3d 301, 306 (3d Cir. 1993); *see also Whitner*, 219 F.3d at 298 (collecting cases).

It is well settled that "direct evidence linking the residence to the criminal activity is not required to establish probable cause." *Burton*, 288 F.3d at 103. "[P]robable cause to search can be based on an accumulation of circumstantial evidence that together indicates a fair probability of the presence of contraband at the home of the arrested." *Id.*; *see also Jones*, 994 F.2d at 1056 (explaining that "probable cause can be, and often is inferred by considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide stolen property." (internal citations and quotations omitted)). "When the crime under investigation is drug distribution, a magistrate may find probable cause to search the target's residence even without direct evidence that contraband will be found there." *United States v. Stearn*, 597 F.3d 540, 558 (3d Cir. 2010).

In this case, the Affidavit of Probable Cause contains direct evidence that establishes a nexus between Defendant, his alleged criminal activity, and the 303 Gardner Street residence. The Affidavit of Probable Cause outlined Defendant's participation in an ongoing and protracted drug trafficking conspiracy principally involving his brother Akilees, including a controlled purchase of fentanyl at Defendant's 303 Gardner Street residence from a historically reliable CI. *See generally* (Doc. 47-1). Police established surveillance at

303 Gardner Street and observed Defendant exit at the rear of 303 Gardner Street and directly proceed to the CI's location, where he subsequently sold fentanyl to the CI and then returned to the rear of his residence. (*Id.* at 14-15). Officers also conducted 13 controlled purchases of crack cocaine and fentanyl from Defendant and his brother, one of which undisputedly occurred at 303 Gardner Street. Officers further surveilled Defendant's brother and determined that he frequently travelled to 303 Gardner Street, which officers further determined was Defendant Armand Hobson's residence. (*Id.* at 12, 23). During the week of September 16, 2024, officers arranged for a controlled purchase of fentanyl from Defendant's brother, who stated he had to "pick it up in Plymouth" first. (*Id.* at 17). Officers then observed Defendant's brother Akilees travel to 303 Gardner Street and walk to the rear of 303 Gardner Street before returning to his car and driving away. Akilees then proceeded directly to the site of the controlled purchase and sold the CI fentanyl. (*Id.* at 18). Accordingly, the Affidavit of Probable Cause contains ample direct evidence connecting Defendant's alleged drug activities to 303 Gardner Street.

In addition to the direct evidence linking Defendant's alleged drug activities to 303 Gardner Street, the circumstantial evidence included in the Affidavit of Probable Cause demonstrates that the issuing judge had more than sufficient grounds to find that probable cause existed. It is reasonable for Judge Vough to infer that drug-related evidence would be found at the residence of an individual involved in drug dealing. *Hodge*, 246 F.3d at 306; *see also Whitner*, 219 F.3d at 298 (collecting cases). This inference is based on evidence

supporting the following premises: "(1) that the person suspected of drug dealing is actually a drug dealer; (2) that the place to be searched is possessed by, or the domicile of, the dealer; and (3) the home contains contraband linking it to the dealer's drug activities." *Burton*, 288 F.3d at 104. Each premise is discussed in turn.

First, the Affidavit describes at least one controlled purchase of fentanyl at 303 Gardner Street by Defendant that were observed by surveillance units and arranged by a confidential informant at the request of the affiants. (Doc. 47-1 at 14-15). Moreover, officers arranged for a controlled purchase of fentanyl from Defendant's brother, who stated he had to "pick it up in Plymouth" first. (*Id.* at 17). Officers then observed Akilees travel to 303 Gardner Street and walk to the rear of 303 Gardner Street before returning to his car and driving away. (*Id.* at 18). He then proceeded directly to the site of the controlled purchase and sold the CI fentanyl. (*Id.*). It is reasonable to infer from these events that Defendant is a drug dealer. The fact that an informant organized drug transactions with Defendant at a specific time and place suggests that Defendant was both familiar with and had experience in drug transactions. *See Hodge*, 246 F.3d at 306 ("The fact that an informant, whose tip was corroborated by what actually happened, told police that Hodge would be delivering cocaine at a particular time and location suggests both that Hodge's drug activities were organized and that Hodge was sufficiently involved in the drug trade that others knew of his activities."). Therefore, Judge Vough had a substantial basis to conclude that Defendant was a drug dealer.

Second, the Affidavit of Probable Cause contains sufficient evidence to infer that Defendant possessed or was domiciled at 303 Gardner Street. As previously discussed, surveillance officers observed Defendant arrive at or depart from 303 Gardner Street several times, one of which occurred immediately before Defendant conducted an alleged drug transaction. *See United States v. Walker*, 776 Fed. Appx. 784, 786 (3d Cir. 2019) ("He was seen leaving the house immediately before selling drugs to the informant, supporting the inference that drugs were being stored there."). Viewed in a commonsense manner, the facts and inferences derived therefrom could reasonably lead the issuing judge to find that Defendant either possessed at or was domiciled at 303 Gardner Street. Indeed, Defendant does not dispute that 303 Gardner Street is his residence, and that officers observed him at 303 Gardner Street multiple times, including during the controlled purchase on September 12, 2024. (Doc. 47-1 at 13-15, 20). Moreover, Defendant does not dispute that his Pennsylvania Identification Card listed his address as 303 Gardner Street in Plymouth. (*Id.* at 9).

Finally, the Affidavit contains ample evidence to infer that 303 Gardner Street contained contraband that would link the property to Defendant's alleged drug activities. As an initial matter, the issuing judge "'is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense.'" *Hodge*, 246 F.3d at 305-06 (quoting *Whitner*, 219 F.3d at 296). The issuing judge "may give considerable weight to the conclusions of experienced law enforcement officers regarding

25

where evidence of a crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *Whitner*, 219 F.3d at 296.  In this case, the affiants are experienced law enforcement officers with significant experience and training in the investigation of drug-related crimes.  *See Walker*, 776 Fed. Appx. at 786 ("Finally, the affidavit provides that Weaver, an officer with substantial experience and specialized training in narcotics investigations, believed that the residence was being used for the storage and distribution of drugs.").

Additionally, Defendant was suspected of drug-related crimes and law enforcement obtained the search warrant to further the investigation into Defendant's alleged drug activities.  (*See generally* Doc. 47-1, Affidavit of Probable Cause).  The Third Circuit has explained that "evidence of involvement in the drug trade is likely to be found where the dealer resides."  *Whitner*, 219 F.3d at 297 (collecting cases).  This is because "evidence associated with drug dealing needs to be stored somewhere, and [a] dealer will have the opportunity to conceal it in his home."  *Id.*  This inference is even stronger where, as here, Defendant "was seen leaving the house immediately before selling drugs to the informant." *Walker*, 776 Fed. Appx. at 786.  Moreover, the 303 Gardner Street property was located in Plymouth, which is the same city and the same location in which the alleged drug transactions between Defendant and the confidential informant took place.  Plymouth is also the located identified by Defendant's brother as the location where he needed to "pick up"

fentanyl, and he was observed travelling to 303 Gardner Street prior to meeting with the CI,

"rendering [303 Gardner Street] a more likely repository of his drug-related paraphernalia."

*See Hodge*, 246 F.3d at 307.  And Defendant does not dispute that 303 Gardner Street is

his residence.

Upon consideration of the totality of the circumstances, including the nature of the

crime of which Defendant was suspected, the type of evidence sought by the search

warrant, including controlled substances, drug paraphernalia, and other drug-related

evidence, and the other allegations contained in the Affidavit of Probable Cause, Judge

Vough had a substantial basis to conclude that evidence of Defendant's alleged drug

activities would be found at 303 Gardner Street.  Evaluating the entirety of the Affidavit of

Probable Cause in support of the search warrant for 303 Gardner Street in a commonsense

manner, the Court finds that it provided a substantial basis for Judge Vough to conclude that

evidence of drug dealing would be found at 303 Gardner Street and that a sufficient nexus

existed between 303 Gardner Street and Defendant's allegedly illegal activities.  Therefore,

Defendant's Motion to Suppress will be denied.

In addition, the Court further finds that the warrant is not overbroad, and the

information relied on in the affidavit was not stale.  *See United States v. Hopkins*, 2023 WL

3232604, at *5 (M.D. Pa. May 3, 2023) (rejecting Defendant's staleness argument where

"[i]t is clear from an examination of the information contained within the affidavit of probable

cause that there was a course or pattern of ongoing and continuing criminal acts

occurring.").  "Thus, this clear demonstration of a course or pattern of ongoing and continuous criminal activity overcomes the staleness of the information relating to the first controlled buy." *Id.*

Here, the Court rejects the argument that the 12 days between the controlled purchase at 303 Gardner Street and the search of the residence rendered any information in the affidavit "so clearly stale that reasonable officers could not have believed that the warrant was valid." *United States v. Ninety-Two Thousands Four Hundred Twenty-Two Dollars & Fifty-Seven Cents*, 307 F.3d 137, 148 (3d Cir. 2002).  Where, as here, "an activity is of a protracted and continuous nature, the passage of time becomes less significant." *United States v. Tehfe*, 722 F.2d 1114, 1119 (3d Cir. 1983).  Over a period of weeks, officers conducting a drug investigation observed a total of 13 total controlled purchases, one of which occurred at 303 Gardner Street and another which saw Defendant's co-conspirator stop at the residence to "pick [fentanyl] up."  (Doc. 47-1 at 17-18).  Defendant's co-conspirator travelled to 303 Gardner Street multiple times per day typically for short periods of time and conducted controlled buys within 48 hours of the warrant application. (*Id.* at 17-23).  Accordingly, the Court finds that the information contained in the warrant is not stale. *See United States v. Caple*, 403 Fed. App'x 656, 659 (3d Cir. 2010) ("We agree with the District Court that the information contained in the affidavit was not stale.  The information in the affidavit indicated that Caple had engaged in drug trafficking activity over

a period of months, with the last controlled transaction taking place only weeks before the warrant was issued.").

The Court further finds that the warrant is not overboard. Read as a whole, the warrant application identified the place to be searched and the items to be seized with particularity. Although the application attaches a picture depicting a duplex consisting of 303 and 301 Gardner Street, it is undisputed that the warrant only authorized the search of, and officers only searched, 303 Gardner Street. The warrant application described with particularity the place to be searched—a single-family residence which made up one half a duplex. The mere fact that the warrant application included a picture of the entire duplex does not render it overboard where, as here, the place to be searched (and the place that was in fact searched) was identified with particularly. *See United States v. Jones*, 2023 WL 2287652, at *7-8 (M.D. Pa. Feb. 28, 2023).

Even assuming, *arguendo*, that the warrant lacked probable cause, was overboard, and contained stale information, the evidence obtained for search of 303 Gardner Street would still be admissible under the good faith exception to the warrant requirement as set forth in *United States v. Leon*, 468 U.S. 897 (1984). The officers in this matter obtained the warrant and executed it in good faith, and Defendant does not argue otherwise. *See Ninety-Two Thousands Four Hundred Twenty-Two Dollars & Fifty-Seven Cents*, 307 F.3d at 146 ("The fact that an officer executes a search pursuant to a warrant typically 'suffices to prove that an officer conducted a search in good faith and justifies application of the good

faith exception.'") (quoting *United States v. Hodge*, 246 F.3d 301, 308 (3d Cir. 2001).

Moreover, none of "four narrow situations in which an officer's reliance on a warrant is not

reasonable," *id.*, apply, and Defendant does not claim otherwise.

## IV. CONCLUSION

For the foregoing reasons, Defendant Armand Hobson's Motion to Suppress

Evidence, (Doc. 46), will be denied. A separate Order follows.

Robert D. Mariani
United States District Judge